### HAINES *v.* GIBSON.

1. PRINCIPAL AND SURETY—LOGGING CONTRACT.

    One who becomes surety for the performance by a logging contractor of an agreement to cut and haul the marketable timber from specified lands, the owner, under the terms of the contract, having "the right to dictate from time to time what timber is marketable," cannot claim his release on the ground that the owner prevented the contractor from cutting and hauling all the marketable timber.

2. SAME — CONSTRUCTION — MATERIAL ALTERATION — RELEASE OF SURETY.

    The contract provided that "all logs shall be put into Pine lake * * * on or before the 1st day of April, 1896, and shall be driven to the owner's boom in Lake Superior at the mouth of Pine river." With the owner's consent, the logs were hauled to Ives lake, situated about a quarter of a mile above Pine lake, and connected with it by a stream. *Held,* that, the contract specifying no route for conveying the logs to Pine lake, and there being no evidence that the route through Ives lake and the connecting stream was not feasible, the arrangement for hauling the logs to Ives lake was not a material alteration of the contract.

3. SAME—CONTRACTOR'S AGREEMENT WITH SURETY — WHEN BINDING ON OBLIGEE.

    The fact that the contractor failed to keep an agreement made with the sureties on his bond in the absence of the obligee, and without the latter's consent or knowledge, that he would adopt a specified route for hauling the logs, would have no bearing upon the right of the obligee to enforce the bond as against the sureties upon the contractor's default.

4. JUDICIAL NOTICE—CONDITION OF WEATHER.

    The court cannot take judicial notice that the weather on the 1st of April in portions of the Northern Peninsula is always such that the lakes and streams are not open for the floating of logs.

Error to Marquette; Stone, J. Submitted October 7, 1897. Decided December 7, 1897.

*Assumpsit* by Frank E. Haines and Charles T. Fairbairn against Thomas H. Gibson and James H. Gamble, principals, and Carl Peterson, Louis Calus, and Barnet Levine, sureties, upon a bond for the performance of a lumbering contract. From a judgment for plaintiffs on verdict directed by the court, defendants bring error. Affirmed.

Plaintiffs and the defendants Gibson and Gamble entered into a written contract, by which the defendants agreed to cut and haul the marketable pine timber from certain lands. The material parts of the contract are as follows:

"To cut, haul,. and deliver to the first parties in a boom or booms in Lake Superior at the mouth of Pine river, at the time and in the manner hereinafter provided, all the merchantable white pine timber on the following described lands. * * * It is also understood that timber unfit for market shall not be paid for by first parties, and said first parties shall have the right to dictate from time to time what timber is marketable, and what timber shall be left on the land; and the work of second parties shall at all times be under the supervision of the first parties; but any failure of the first parties from time to time to give directions as to matters within their control shall not relieve the second parties from the consequences of any violation of the terms hereof. All said logs shall be put into Pine lake near the premises aforesaid on or before the 1st day of April, 1896, and shall be driven by second parties to the boom or booms in Lake Superior at the mouth of Pine river as soon thereafter as first parties shall be ready with booms and tugs to take care of the same. * * * The boom or booms to receive said logs in the lake shall be prepared by and under the direction of the first parties, and shall be in readiness to receive the logs as soon after the 1st day of April, 1896, as may be found reasonably convenient by the first parties. * * * All timber of the kind to be removed under this contract, burned or down, must be cut and skidded by second

parties first, before cutting and skidding standing or unburned timber. * * * All logs shall be scaled by a competent scaler to be provided by the first parties. * * * The scale of logs made by such scaler from time to time shall be final and conclusive between the parties, unless modified by the scale on the sale of logs; but final settlement between the parties shall be made upon a scale of the logs fixed and received therefor by the first parties on the sale thereof."

Plaintiffs were to furnish Gibson & Gamble supplies and advance money for the performance of the contract. They required a bond of guaranty, which Gibson & Gamble signed as principals, and the other defendants as sureties. The sureties became responsible for the faithful performance of the contract by Gibson & Gamble, and to—

"Save the said Haines & Fairbairn safe and harmless from any and all loss or damage which may be occasioned to them by reason of any violation or nonfulfillment of the terms of said contract by the said Gibson & Gamble to be performed; and [they] shall pay and reimburse said Haines & Fairbairn for any and all such loss or damage as may be occasioned to them by the neglect or default of said Gibson & Gamble, or by any such violation or nonfulfillment of the terms of said contract."

There was no dispute over the amount which plaintiffs had paid Gibson & Gamble over and above the contract price, and the court, at the conclusion of the testimony, directed a verdict for the plaintiffs.

*Clark & Pearl*, for appellants.

*Hayden & Young*, for appellees.

GRANT, J. (*after stating the facts*). The defenses are: ·

(1) That plaintiffs prevented Gibson & Gamble from cutting and hauling all the marketable timber.

(2) That the logs were banked upon the shore of Ives lake, instead of being put into Pine lake, as provided by the contract.

Counsel on both sides concede the law to be that sureties may stand upon the strict terms and letter of the contract, and that any material alteration discharges the sureties. This is elementary law. Defendants, upon the trial, when permitted to amend their notice under the plea, expressly disclaimed any fraud. The errors claimed must therefore be discussed upon the basis that all the parties acted in entire good faith.

1. Defendants sought to show that all the marketable pine timber was not cut from the lands, and that Gibson & Gamble were prevented from so doing by the action of the plaintiffs. The complete answer to this claim is that plaintiffs, under the contract, exercised their judgment in determining what was marketable. If, therefore, this was a "jug-handled" or "one-sided" contract, as defendants' counsel call it, all the parties entered into it with complete knowledge of its terms, and cannot now be heard to complain. It follows that the court properly excluded all the testimony tending to show that all the marketable timber was not cut.

2. Ives lake is about a quarter of a mile above Pine lake, a stream connecting the two. From Pine lake a stream runs into Lake Superior. The upper end of Mountain lake is very near the lands from which the timber was cut, and is also connected with Pine lake by a stream of about the same length as the one running from Ives lake into Pine lake. Counsel for the defendants assume that the expression "put into Pine lake" is synonymous with the term "to bank upon Pine lake." Counsel also appear to assume that it is common knowledge that the lakes and streams in that country are usually frozen over the 1st of April, and to argue from this that the proper interpretation to be given to the contract is that the logs were to be hauled to and banked upon the shore of Pine lake. The haul to Ives lake is considerably shorter than the one over Mountain lake to Pine lake. The contract prescribed no route for hauling, and manifestly any feasible route was left open for adoption. If the sureties de-

sired to have a route fixed, they should have had it inserted in the contract. Counsel for defendants offered to show that Gibson & Gamble informed their sureties that the haul would be over Mountain lake; but plaintiffs were not present, and no offer was made to show that plaintiffs knew of or assented to this representation. The contract fairly assumes a possibility that the water might be open, so as to move the logs, by the 1st of April. We cannot take judicial notice that the condition of the weather in that part of the State is always such that the water is never open by that time, and from that to interpret this contract as meaning that the logs were to be hauled to and put upon the ice on Pine lake. We think the court committed no error in rejecting testimony tending to show that the logs were hauled to Ives lake by the assent of the plaintiffs. Their assent would not have relieved the sureties from liability.

The judgment is affirmed.

The other Justices concurred.