WILKIE *v.* WELLER.

1. CONTRACTS — ASSIGNMENTS — ORAL CONTRACT—COMPLETED CONTRACT—EVIDENCE—QUESTION FOR JURY.

In an action on an oral contract to recover the balance of the purchase price of plaintiff's rights to extra compensation for sugar beets under a contract with a beet sugar company, where defendant paid part of the purchase money to bind the bargain and was to pay the balance the following Saturday night, contradictory testimony as to whether the oral contract was completed when the earnest money was paid, *held*, to present a question of fact for the jury under proper instructions.

2. GAMING—CONTRACTS—ILLEGAL INTENT MUST BE HELD BY BOTH PARTIES.

A contract whereby defendant purchased for a fixed price plaintiff's rights to extra compensation for sugar beets under a contract with a beet sugar company, the amount thereof depending upon the average price of sugar, *held*,

not a gambling contract, since, to render it illegal, both parties must jeopardize something and both entertain an unlawful intent, while in the instant case the amount to be paid plaintiff was fixe&; the defendant only having an unlawful intent.

3. CONTRACTS—ASSIGNMENTS—WRITTEN ASSIGNMENT UNNECESSARY.
    A written assignment of the contract to defendant, was not necessary, since defendant, by reason of his purchase, became assignee of plaintiff's interest in the additional compensation part of the sugar beet contract.

4. SAME—EVIDENCE—SELF-SERVING ACT.
    Where defendant denied that a completed contract was effected, the delivery by plaintiff of an order to the beet sugar company to pay the extra compensation to defendant was a self-serving act, and evidence thereof was inadmissible to prove a completed contract.

Error to Clinton; Moinet (Edward J.), J.    Submitted January 10, 1923.    (Docket No. 70.)    Decided April 27, 1923.

Assumpsit by Robert Wilkie against Charles E. Weller for the purchase price of an interest in a beet sugar contract.    Judgment for plaintiff.    Defendant brings error.    Reversed.

*Searl & Searl,* for appellant.

*Smith, Hunter & Spaulding,* for appellee.

McDONALD, J.    This action is brought to recover the balance of the purchase price of plaintiff's rights to extra compensation in a contract which he had with the Owosso Sugar Company.    On March 3, 1920, the plaintiff entered into a contract with the Owosso Sugar Company by the terms of which he was to grow beets and deliver them to the company for which he was to be paid $10 per ton and an additional compensation per ton depending on the price of sugar.    That

part of the contract relating to the additional compensation is as follows:

"If the average price of beet sugar exceeds $9 per hundred pounds, then the company shall pay to the grower, as additional compensation per ton of beets for all the beets he may deliver under this contract, the difference between $9 per hundred pounds of beet sugar and the average price thereof, which average price shall be determined as hereinafter provided.

"Illustration—If the average price of beet sugar should be $9.50 per hundred pounds, the additional compensation would be 50 cents per ton of beets.
\* \* \*

"Payment of the additional compensation shall be made by the company on February 15, 1921, and the grower will be given a report showing the computation of the average price."

On July 24, 1920, the plaintiff claims that he made an agreement with the defendant to sell his rights to extra compensation for $5 per ton, and that on an estimate of 1,000 tons of beets to be grown and delivered the defendant agreed to pay him $5,000. The agreement was not in writing but the defendant paid $25 as earnest money and agreed to pay the balance on the following Saturday night. At the time specified he refused to make any further payment, and this suit was begun in November, 1920, to collect the balance of the purchase price.

The defendant claims that at the time he agreed to purchase plaintiff's rights and paid the $25 to bind the bargain, the contract was not completed; that the details were to be worked out and arranged at their next meeting on Saturday night; that on Saturday night he insisted that if he paid the $5,000 the plaintiff should furnish him security that he would carry out his contract with the company by growing and delivering the beets; that the plaintiff was unable to give any security and said that they would have to call the contract off, and agreed to pay back the $25

which defendant had deposited as earnest money. It is the defendant's claim that there was never any completed or definite contract between them, and that it was so regarded by both parties, but that in December the price of sugar declined very rapidly and that the plaintiff, realizing that the extra compensation provided in the contract would be very small, gave the company an order to pay it to the defendant. After the suit was begun the company sent defendant a check for $62, which he returned.

The declaration contains a special count on the contract and the common counts in assumpsit. The defendant's plea was the general issue with notice that no completed contract was made between the parties, and that if it had been completed it was a gambling contract and therefore illegal and void. When the proofs were closed the defendant moved for a directed verdict against the plaintiff for the reasons set up in his plea. The motion was denied and the case submitted to the jury. Plaintiff received a verdict for the full amount of his claim. The defendant has brought the case here by writ of error.

The principal questions involved are:

*First.* Did the minds of the parties meet on a completed contract.

*Second.* If a completed contract were made, is it a gambling contract and therefore void and unenforceable.

*Third.* Improper instructions to the jury as to the necessity for a formal assignment of the contract and the consideration to be given to the order by plaintiff on the company for the payment of the extra compensation.

Was there a completed contract? It is the contention of the defendant that at their first conversation it was contemplated by the parties that further arrangements would be necessary to provide security for carrying out the contract by the plaintiff and to

come to an understanding in regard to other details; that at the second conference on Saturday night these matters were discussed; that they were unable to agree in regard to them and that therefore the contract was not completed. The plaintiff denies this second conversation and claims that at their first meeting all of the terms of the sale were agreed upon and nothing was left open for subsequent consideration. The trial court took the view that whether the contract was completed was a question of fact for the jury. In this we think he was right. What took place at the first meeting is not in dispute. It was there definitely agreed that defendant should purchase all of the plaintiff's interest in the extra compensation which he might receive under his contract with the company, that he should pay therefor $5 a ton on an estimated crop of 1,000 tons, that he paid to the plaintiff $25 on the agreed purchase price and was to pay the balance on the following Saturday evening. If this were all, the contract was complete and the court could have so held as a matter of law, but defendant's claim that something further remained to be done at the subsequent meeting made it a question for the jury under proper instructions from the court.

It is next urged by counsel for the defendant that the contract was nothing more than a wager on the future price of sugar, and was therefore a gambling transaction, illegal and void. In support of this claim our attention is called to many cases mostly involving the sale of stock on margins where the stock is not intended to be delivered nor paid for, but where the contract is to be settled on a basis of the difference between the contract price and the market price. If the price declines below that of the contract the buyer pays the difference; if it advances the seller pays the difference. Such a contract is a gambling contract and the law will not permit an action to be maintained

upon it. These cases are all distinguishable in their facts from the instant case. In this case the property sold was an interest in a valid contract, and the price paid by the defendant did not depend upon the future price of sugar. The plaintiff took no risk. Only the defendant speculated. What he had to pay was definitely specified, but what he might receive was speculative. The plaintiff's interests were unaffected by the rise or fall in the price of sugar. The consideration moving to him was fixed at $5,000. He was not to gain or lose anything. In a wager contract both parties take a risk; if one gains the other loses. Both jeopardize something. If the unlawful intent is entertained by only one of the parties the transaction is not illegal. *Donovan* v. *Daiber,* 124 Mich. 49; *Gregory* v. *Wendell,* 40 Mich. 432. If both parties were contracting in reference to the rise or fall in the price of sugar at some future time with no other interest involved, a different question might be presented. That, however, is not this case. The extra compensation or what the parties have called "bonus money," represented an interest in the beet contract which was a valid contract. It was something that could be sold and assigned. It was of some value to the plaintiff. At the least it was a possibility coupled with an interest. There was a consideration if Wilkie sold to Weller an interest which was of some value to him, however slight that value might be. Whether it turned out to be valuable to Weller is not material. The adequacy of the consideration is a matter solely between the parties, and is no concern of the courts in a case of this character. That the benefit to be derived by the defendant was contingent or uncertain and speculative does not make the agreement a wagering contract.

"A valid assignment may be made of the expected, though contingent, avails of future transactions under

an existing contract, * * * although subject to a contingency whether it will ever be earned." *Greene* v. *Bartholomew*, 34 Ind. 235, and cases cited.

Counsel for the defendant cite *First National Bank* v. *Carroll*, 8 L. R. A. 275 (80 Iowa, 11, 45 N. W. 304), as controlling of this question. In that case two parties each owned a half interest in certain cattle; one of the parties in consideration of $30 guaranteed that the cattle would sell for four cents a pound on the Chicago market. If they sold for less he would pay the other the difference; if they sold for more the other party would pay him the difference. No sale of the cattle from one to the other was involved. This was simply a speculation by both parties on the price of cattle. One of the parties was to lose, the other was to get something for nothing. Both took a risk. Neither sold anything. It was held to be a wagering contract. In the instant case the facts are quite different. Here the plaintiff sold something for a definite price. He took no risk. He gained or lost nothing if the price of sugar advanced or declined. That the defendant intended to speculate on future prices and risked the loss of his $5,000 did not make the contract illegal.

"Since the element of risk is present in all executory transactions, the presence of a risk does not make a contract a wager, as long as the risk is found in the outcome of an event which is not arbitrarily selected by the parties, but which, in the ordinary course of things, affects the transaction into which the parties have entered, so as to give them an interest therein.

"If the risk is one which is inherent in the nature of the transaction and which is not arbitrarily selected by the parties, the contract is not illegal." 2 Paige on Contracts (2d Ed.), pp. 1463, 1464.

"It is not considered a wager where there is a real and inherent relation between the contingency and the gain or loss to the parties." 12 R. C. L. p. 748.

In this case the sale was of a property right in a valid existing contract; the risk which the defendant assumed did not depend upon an event arbitrarily selected by the parties, but arose out of the subject-matter of the contract; the consideration did not depend upon the rise or fall in the price of sugar; the dealings were not against public policy, and though the contract was speculative it was not gambling or wagering.

The third question discussed in the briefs of counsel relates to the charge of the court. It is first claimed that the circuit judge erred in instructing the jury that a written assignment of the contract to defendant was not necessary. This claim has no merit. Without formal assignment, the defendant became, by reason of his purchase, assignee of the plaintiff's interest in the additional compensation part of the beet sugar contract. No writing was necessary. There was a valid assignment. The court did not err in so charging the jury.

The plaintiff gave the company a written order to pay the additional compensation to the defendant. The date of the order and the time of its delivery were disputed by the defendant. Referring to this order in his charge the court instructed the jury as follows:

"Upon the question of this order you have the right and should take that into consideration as bearing upon the question of the contract between these people, whatever effect you might find or believe that it has upon the question as to what the bargain was between these parties, as to what the contract was between them, whether they made a completed, valid, binding contract between them. You have the right to and should take it into consideration as bearing upon the credibility of the witnesses here; Mr. Wilkie and his son, it is claimed, made that and delivered it at Owosso—you should take that into consideration, the

question of time when it was actually delivered, when you find it was delivered there, what effect that had, what was his purpose if any in delivering it at that time. Take all of those facts into consideration."

Counsel for the defendant complain of this instruction that, "it allowed the jury to determine from a self-serving act of the plaintiff whether or not he was telling the truth in regard to what took place between the parties at the time of their talks."

According to the testimony of the defendant the matter of an order on the company was discussed at their second meeting. He testifies that he said to the plaintiff:

" 'Rob, if I put up the money, you will have to fix to secure me some way,' and he says, 'All I could give you would be an order on the company for the bonus, and if you are not satisfied with that we will just have to call the deal off,' and I said, 'All right, Rob, that is up to you,' and he said, 'Well, we will call it off, then,' and I said, 'All right;' stood there a minute and he said, 'Well, I suppose you will want your $25 back,' and I said, 'Why, I sure will,' and he says, 'Well, I haven't got it with me, but I will hand it to you sometime when I see you,' and he went away."

If the defendant has correctly related the conversation the contract failed of completion because he would not agree to accept an order on the company in lieu of security and the plaintiff would not agree to give the security. The plaintiff denied this and claimed that the matter of giving an order on the company was not discussed between them. Thus, there was presented a question of fact for the jury to determine. Their determination of these facts would settle the question as to the completion of the contract. The effect of the instruction complained of was to inform them that they might consider the giving of the order as evidence of a completed contract. The defendant had no knowledge that the company had received such

an order until some time in March, several months after the suit was commenced.    The delivery of the order to the company was a self-serving act on the part of the plaintiff.    It cannot be regarded as evidence that the parties had agreed upon all of the terms of the contract.    The completion of the contract did not depend upon the giving of the order. Under the instruction the jury was at liberty to consider it as supporting the plaintiff's testimony on a very important disputed question of fact.    This is reversible error.

The judgment is reversed and a new trial granted. Defendant will have costs.

WIEST, C. J., and FELLOWS, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.