DETROIT GREYHOUND EMPLOYEES FEDERAL CREDIT UNION *v.* AETNA LIFE INSURANCE COMPANY.

1. CONTRACTS—PRACTICAL CONSTRUCTION.

The manner in which the parties themselves have treated an executory contract that has uncertain or ambiguous terms in it, in carrying it into effect is entitled to great weight as affording a practical construction which the parties themselves have placed upon its intent and meaning.

2. SAME — ASSIGNMENT — PROHIBITION — PRACTICAL CONSTRUCTION — WAIVER.

Action of defendants, parties to annuity contract containing clause prohibiting assignments by employees of benefits receivable under the plan, in recognizing over a 14-year period assignments of employee contributions constituted a practical construction placed by parties on clause prohibiting assignment and thus Court of Appeals erred in terming such recognition a "mere waiver" revocable by notice that no further purported assignments would be recognized.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 17 Am Jur 2d, Contracts §§ 240, 244, 247, 248, 274.
[2] 6 Am Jur 2d, Assignments §§ 22, 47; 17 Am Jur 2d, Contracts § 274.
[3] 17 Am Jur 2d, Contracts § 252.
[4] 6 Am Jur 2d, Assignments § 22.
[5, 6] 6 Am Jur 2d, Assignments §§ 22, 47; 17 Am Jur 2d Contracts §§ 252, 274.

684        381 MICH 683.        [May

3. SAME—ASSIGNMENT—PROHIBITION—AMBIGUITY.

　　Wording specifying prohibition against assignment by employee
　　　under annuity contract to be against assignment of "annui-
　　　ties" and "benefits" when read with provisions granting em-
　　　ployee an option to "receive a refund of his contributions"
　　　which would be "in lieu of all benefits to the employee" gives
　　　rise to ambiguity as to whether assignment of employee's
　　　right to receive refund of contributions is prohibited under
　　　contract; given such an ambiguity, the rule of practical con-
　　　struction may be applied.

4. SAME—ASSIGNMENT—PROHIBITION—PLAINEST WORDS.

　　The courts have striven to uphold freedom of assignability and
　　　have demanded that the plainest words must be used by any
　　　party attempting to compose a contractual bar against aliena-
　　　tion.

5. SAME—ASSIGNMENT—PROHIBITION.

　　Defendants, parties to group annuity contract, failed to use the
　　　plainest wording in clause prohibiting assignment by employees
　　　of benefits under contract where wording of contract gave
　　　rise to ambiguity as to definition of term "benefits" when
　　　that term was used in the prohibition against assignment.

6. SAME — ASSIGNMENT — PROHIBITION — PRACTICAL CONSTRUCTION
　　— GROUP ANNUITY CONTRACT.

　　Defendants, insurance companies and employer, by recognizing
　　　over a 14-year period assignments of employee contributions
　　　under group annuity contract, placed a practical construction
　　　on nonassignment clause in contract excluding from its opera-
　　　tion refunds of employee contributions; thus, plaintiff credit
　　　union was entitled to recover under terms of assignment by
　　　employee of his right to receive the refund of his contribu-
　　　tions.

Appeal from Court of Appeals, Division 1, Lesin-
ski, C. J., and Fitzgerald and J. H. Gillis, JJ., affirm-
ing Wayne, Burdick (Benjamin D.), J. Submitted
November 14, 1968. (Calendar No. 13, Docket No.
51,878.) Decided May 5, 1969.

7 Mich App 430, reversed.

Declaration in Common Pleas Court of Detroit by Detroit Greyhound Employees Federal Credit Union, a Federal corporation, against Aetna Life Insurance Company, Connecticut General Life Insurance Company and Greyhound Corporation, all foreign corporations, for sums due plaintiff under an assignment by an employee of Greyhound Corporation of all moneys payable to him under annuity contract plan embodied in master agreement between defendant Insurance Companies and Greyhound Corporation. Judgment for plaintiff. Defendants appealed to circuit court. Reversed. Plaintiff appealed to Court of Appeals. Affirmed. Plaintiff appeals. Reversed, and judgment ordered entered in circuit court affirming judgment of common pleas court.

*Langs, Schatzberg, Patterson & Langs,* for plaintiff.

*Miller, Canfield, Paddock & Stone* (*John W. Gelder,* of counsel), for defendants.

BLACK, J. Two quotations, dating back to 1886 and 1887 respectively, will serve to present for application to this case a mature rule of interpretive contract law:

"The facts and circumstances attending the making of a contract, are indispensable to a correct construction or interpretation thereof, and if it is executory, and its terms uncertain or ambiguous, the manner in which the parties themselves have treated it, in carrying it into effect, is entitled to great weight as affording a practical construction which the parties themselves have placed upon its intent and meaning." (*Switzer* v. *Pinconning Manufacturing Co.* [1886], 59 Mich 488, 493.)

"If there were any doubt or ambiguity arising upon the words employed in the clause of the contract under consideration, they would be effectually removed by this practical construction continuously put upon them by the conduct of the parties for so long a period.

" 'In cases where the language used by the parties to the contract is indefinite or ambiguous, and hence of doubtful construction, the practical interpretation of the parties themselves is entitled to great, if not controlling, influence. The interest of each generally leads him to a construction most favorable to himself, and when the difference has become serious and beyond amicable adjustment, it can be settled only by the arbitrament of the law. But in an executory contract, and where its execution necessarily involves a practical construction, if the minds of both parties concur, there can be no great danger in the adoption of it by the court as the true one.' " (*Topliff* v. *Topliff* [1887], 122 US 121, 131 [7 S Ct 1057, 30 L Ed 1110]).[1]

The facts in general that are required for determination of this contractually based action appear in that portion of the trial judge's opinion which Division 1 has copied (*Detroit Greyhound Employees Federal Credit Union* v. *Aetna Life Insur-*

[1] There can be no question about the continuity in Michigan of this rule of contractual construction. Examine *Moore* v. *Andrews* (1918), 203 Mich 219; *McIntosh* v. *Groomes* (1924), 227 Mich 215; *Lower* v. *Muskegon Heights Co-operative Dairy* (1930), 251 Mich 450; *Shelton* v. *Wilson* (1936), 274 Mich 433, and *W. O. Barnes Co.* v. *Folsinski* (1953), 337 Mich 370. *Moore* v. *Andrews* proceeds, at 232:

" 'Where the parties to a contract have given it a practical construction by their conduct, as by acts in partial performance, such construction is entitled to great, if not controlling, weight in determining its proper interpretation.' 13 CJ, Contracts, § 517, p 546; *Switzer* v. *Pinconning Manufacturing Co.* (1886), 59 Mich 488; *Farnsworth* v. *Fraser* (1904), 137 Mich 296; *Axe* v. *Tolbert* (1914), 179 Mich 556; *Ardis* v. *Grand Rapids & I. R. Co.* (1918), 200 Mich 400; *Brown* v. *A. F. Bartlett & Co.* (1918), 201 Mich 268."

For an up-to-date review see 17 Am Jur 2d, Contracts, § 248, "Meaning as accepted or understood by parties", pp 640, 641, and § 274, "Construction by Parties", pp 683–685.

*ance Co.,* 7 Mich App 430, 433–436).    Additional specific facts, all undisputed, will be supplied.

Without hinting at agreement or disagreement with treatment below of the precedently posed questions (*Greyhound, supra,* at 436–439), we think our Brethren of the Court of Appeals erred decisively when they concluded that the method of performance pursued by the parties to the group annuity contract, continuing as that method did some 14 years with no question raised or reservational notice given, amounted only to a "mere waiver" which was revocable at all times within the Corbin rule (3A Corbin, Contracts, § 764).[2]    We find instead that this is a clear case for application of the interpretive rule to which the present opinion directs attention.

The beginning issue in this case is whether, as claimed by the defendant insurance companies and denied by plaintiff, the presently quoted no assignment clause must be interpreted and applied as prohibiting assignments by certified employees of their right, under "option B," to receive refunds of their respective contributions to the annuity plan.    That depends upon the presence or absence of ambiguity in the annuity contract and certificates issued thereunder.

Option B does not seem to have been considered by either court below, so far at least as the respective opinions disclose.    It appears in each certificate which, by the group annuity contract, the defendant insurance companies agreed to issue for delivery to each participating employee.    For convenience we array the no assignment clause with option B.

---

[2] The period of recognition and continued acceptance of the various assignments made by Greyhound employees commenced at the inception of the joint annuity contract—in 1941.    The parties litigant have stipulated to this.

The no assignment clause reads:

"Neither the employee, nor the beneficiaries, nor the joint annuitants may assign the annuities or other benefits payable under this contract."

Section 6 of the employee's aforesaid certificate is headed "Termination of Employment." The beginning paragraph proceeds, "If employment is terminated before the discontinuance of the contracts, the employee may choose either one of the two following options:" After option A comes option B:

"Option B: to elect, before his annuity commencement date, to receive a refund of his contributions (but not the employer's contributions), accumulated at 2% interest per annum, compounded annually, interest being computed separately on each contribution from the end of the contract year in which the contribution was made to the first day of the contract month in which the refund is elected. The insurance companies reserve the right to pay such refund to the employee in 12 monthly instalments, each equal to 8.41% of such refund. This refund will be in lieu of all benefits under the contracts to the employee, to his beneficiary, and to his joint annuitant; except that if this option B is chosen on or after the discontinuance of the contracts and if all of the retirement annuities purchased for the employee by employer contributions have not been cancelled by reason of the employee's termination of employment before such discontinuance, the employee will retain a paid-up deferred annuity without death benefit in the form and for an amount determined by the contracts."[3]

---

[3] Another provision, not constituting a part of the annuity contracts or certificates issued thereunder, was referred to by the circuit judge as having bearing upon the interpretive question. See 7 Mich App at 434, 435. That provision appears in a booklet which the employer Greyhound issued unilaterally to each of its employees, entitled "Employees' Retirement Plan." The provision reads:

Note how "This refund" is distinguished from "all benefits under the contracts." That phrasing alone, to say nothing of the point of practical construction of the contract documents, leads to conclusion that the best that may be said for the contention of the defendant insurers is this:

Finding that the prohibition against assignment is of "annuities" and "benefits" only, and reading that option B provides that the elective right of a departing employee to "receive a refund of his contributions" will be "in lieu of all benefits to the employee," there at least is some ambiguity here. That ascertained, we may rule only that the mutually agreeable mode of performance of the contract by the parties, between 1941 and 1955, bring the presented question of interpretation directly within the rules quoted at the beginning of this opinion.

It is recognized candidly in Judge FITZGERALD's opinion that "courts have striven to uphold freedom of assignability." Indeed, one court prominently quoted in that opinion has repeatedly ruled that those who would compose a contractual bar against alienation must use "the plainest words"; our reference being to both *Allhusen* v. *Caristo Construction Corp.* (1952), 303 NY 446 (103 NE2d 891), and its predecessor (in which Mr. Justice Cardozo concurred), *State Bank* v. *Central Mercantile Bank* (1928), 248 NY 428 (162 NE 475, 59 ALR 1473). Consider this language, appearing in both cases:

---

"Withdrawal of Contributions:

"28. You may not withdraw your contributions so long as you remain in the service of the Greyhound lines, nor borrow against them at any time, for to do so would defeat the purpose of the Plan."

Protrudent questions making for more ambiguity arise from this provision. Why did not the contract documents proper use such plain words, and why did all parties for 14 years recognize and effectuate the borrowing by employees against such contributions, *if in intentional fact such borrowing was banned?*

"Clear language should therefore be required to lead to the conclusion that the certificates are not assignable. (1 Williston on Contracts, § 422.) We cannot deduce such consequences from uncertain language. *Scheffer* v. *Erie County Savings Bank* (1920), 229 NY 50 (127 NE 474). The plainest words should have been chosen, so that he who runs could read, in order to limit the freedom of alienation of rights and prohibit the assignment."          :

Now it is quite true that, upon the facts adduced for *Allhusen,* the court found that it had before it (1952) "a clause embodying clear, definite and appropriate language, which may be construed in no other way but that any attempted assignment of either the contract or any rights created thereunder shall be 'void' as against the obligor." But here, the prohibitory words employed by the defendant insurers considered with the language they themselves inserted in option B, there is no clear and definite clause as claimed, no use of "the plainest words," and at most no more than that kind of contractual doubt which the parties and participants settled conclusively by mutually agreeable performance long before new and technical interpretive thoughts reared themselves for litigatory controversy.

For the foregoing reasons we cannot, unaided by interpretive facts supplied dehors the group annuity contract and the conjoined employee certificates, say that the phrase "other benefits," appearing in the no assignment clause, included within its bar the employee's optional right to receive "a refund of his contributions" within option B. The noun "benefits," standing possibly one way in the no assignment clause and in a manifestly variant way in option B, has too loose and uncertain a range or ambit for any such hard and fast interpretation of these contract documents, most certainly when

the scriveners thereof have failed to use "the plainest words" to attain the prohibition for which they belatedly contend. See the abundance of understandable divergencies that are gathered in 5 Words and Phrases (Permanent Ed), "benefit," pp 468 through 485.

*State, ex rel. State Employees' Retirement Board,* v. *Yelle* (1948), 31 Wash 2d 87 (195 P2d 646), is trenchantly instructive. There a former employee demanded a refund of his contributions to the State employees' retirement fund. He was entitled to such refund provided it did not come within the scope of "allowances or other benefits." The court went farther than we need go here, ruling that the posed question presented no element of ambiguity and that the employee was entitled to the refund sought. Its ruling (p 94):

"The refund of an employee's contributions on his withdrawal from service before retirement is not a 'retirement allowance,' nor is it one of the 'benefits' to which a 'retiring member' is entitled under the act. An employee who withdraws from service, or any member of the retirement system who ceases to be an employee, before the prescribed time for his retirement is not a 'retiring member' under the act and is not entitled to any of the 'benefits' of the retirement system, such as an annuity or pension. By such withdrawal or cessation of membership he is effectively precluded from receiving any of the prescribed benefits. His only right, under such circumstances, is to demand and receive a refund of the contributions made by him while he was a member in good standing of the retirement system. But such a refund, or the right to receive it, is not one of the prescribed 'benefits' of the act. In a sense, the contribution paid by the employee into one of the funds which the retirement board administers may be compared to the price paid by one for admission to a game or play, or for a railroad ticket.

If the holder thereof declines to use the ticket, or puts himself in such position that he cannot use it, he forfeits any benefits that he might otherwise have derived from his contract. His only right in such instance would, in any event, be to have the amount of the purchase price refunded to him."

*To Conclude:*

1. One continuous passage, appearing in the particular text of American Jurisprudence to which reference has been made, fits both the facts and our instant decision (17 Am Jur 2d, Contracts, § 274, p 685):

"It is to be assumed that parties to a contract know best what was meant by its terms and are the least likely to be mistaken as to its intention; that each party is alert to protect his own interests and to insist on his rights; and that whatever is done by the parties during the period of the performance of the contract is done under its terms as they understood and intended it should be. Parties are far less likely to have been mistaken as to the meaning of their contract during the period when they are in harmony and practical construction reflects that meaning than when subsequent differences have impelled them to resort to law and one of them then seeks a construction at variance with their earlier practical construction of its provisions."

2. This action originated in the common pleas court of Detroit. Its direct purpose was to recover from the defendants some $90, which by them had been paid to a former Greyhound employee in violation, as claimed, of the plaintiff's right to that sum as assignee of such former employee. Its indirect purpose, however, as represented in the plaintiff's brief and disclosed openly at oral argument, was to settle for all litigating parties the legal status of corresponding assignments aggregating some $750,000 in amount; assignments which are held in

abeyance for honor or dishonor pending final judgment in this action.[4]

Reversed and remanded for entry of a new judgment in circuit affirming the judgment of the common pleas court of Detroit. Costs of all courts to plaintiff.


T. E. BRENNAN, C. J., and DETHMERS, KELLY, and ADAMS, JJ., concurred with BLACK, J.


T. M. KAVANAGH, J., concurred in result.


T. G. KAVANAGH, J., took no part in the decision of this case.

---

[4] These recitals will, we believe, serve to explain what otherwise might be professionally regarded as a curious order granting leave (379 Mich at 786) to review a not particularly significant case.