**CHARLES L. BOWMAN & COMPANY, a Michigan corporation, Plaintiff-Appellant,**

v.

**C. Ward ERWIN, Defendant-Appellee.**

No. 71–3403.

United States Court of Appeals, Fifth Circuit.

Nov. 6, 1972.

Jose E. Martinez, William E. Sadowski, Miami, Fla., for plaintiff-appellant.

J. T. Blackard, Jackson L. Peters, Miami, Fla., for defendant-appellee.

Before JOHN R. BROWN, Chief Judge, and GODBOLD and SIMPSON, Circuit Judges.

GODBOLD, Circuit Judge:

Charles Bowman and Company (Bowman and Company) instituted this diversity suit in the United States District Court for the Southern District of Florida to recover from C. Ward Erwin approximately $21,000 due under a promissory note executed by Erwin and held by Bowman and Company. Erwin counterclaimed that Bowman and Company had wrongfully received about $72,000 in royalty checks, made payable to Bowman Feed Products (Bowman Feed) and endorsed by Bowman and Company. Erwin stipulated his liability on the note,

the case was tried on the counterclaim, and at the close of all evidence the District Court directed a verdict on the counterclaim for Erwin. The propriety of that directed verdict is the only issue on appeal. We reverse and remand.

Erwin developed a dog food additive effective in alleviating halitosis of dogs and other "doggy odors." In 1951 Erwin, then a resident of Illinois, entered into a contract with Bowman Feed, a Michigan corporation, by which Bowman Feed was to market the additive and pay a percentage of the profits to Erwin. The parties amended the contract in 1964 when a dispute arose over the method of calculating Erwin's royalty payments. Pursuant to the amendment, Bowman relinquished its exclusive right to market the additive, Erwin assumed the marketing rights, and Erwin promised to pay Bowman Feed a percentage of the profits from the sale of the additive. On April 29, 1965, Bowman Feed was voluntarily dissolved. Notwithstanding the dissolution, Edwin continued to make the royalty payments called for by the amended contract, and with one exception [1] the royalty checks were made payable to Bowman Feed. The payments continued into 1969, when Erwin determined that Bowman and Company was the wrongful recipient of those royalty checks postdating the dissolution of Bowman Feed.

## I. Choice of Law

■■ Our first step is to select the controlling state law, although laws of assignment and contract interpretation are essentially uniform. In this diversity case we apply the substantive law of the forum state, Florida, which includes its conflict of law rules. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under Florida law "matters bearing upon the execution, validity, interpretation,

and obligations of contracts are determined by the laws of the place where the contract is made, whereas matters connected with performance are regulated by the law of the place where the contract is to be performed; matters relating to procedure are dependent upon the law of the forum." Aetna Cas. & Sur. Co. v. Enright, 258 So.2d 472, 475 (Fla.Ct.App.1972). Accord, Brown v. Case, 80 Fla. 703, 86 So. 684 (1920); State-Wide Ins. Co. v. Flaks, 233 So.2d 400 (Fla.Ct.App.), appeal dismissed, 238 So.2d 427 (Fla.1970). According to these principles, contract interpretation as well as problems relating to the assignment or transfer of the contractual rights are governed by Michigan law.[2]

## II. Assignment

■ The next question is whether Bowman Feed in fact assigned to Bowman and Company its rights to royalty payments accruing under the 1951 contract as amended in 1964. Oral assignments of contractual rights are valid in Michigan. Alexander v. Creel, 54 F.Supp. 652, 657 (E.D.Mich.1944); L. C. Monroe Co. v. Vander Sys., 260 Mich. 511, 245 N.W. 506 (Mich.1932); Wilkie v. Weller, 222 Mich. 664, 193 N.W. 235, 238 (Mich.1923). Also, in light of Michigan's statutory three-year period for winding up the affairs of a dissolved corporation, 24 Mich.Comp.Laws Ann. § 450.75 (1967), the search for an assignment must extend three years beyond April 29, 1965, the date of Bowman Feed's dissolution. Concluding that the three years after April 29 were barren of assignment, the District Court directed a verdict for the counterclaimant. Our standard of review is that stated in Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir. 1969) (en banc):

> On motions for directed verdict . . . the Court should consider all of the evidence—not just that evi-

---

1. A check dated June 2, 1965 was made payable to Bowman and Company. Erwin testified that this check was drawn by his wife. The trial court excepted the amount of this check from the judgment for Erwin on the counterclaim.

2. The parties have manifested consent to the applicability of Michigan law, and they have specified no reasons for a different result.

dence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. . . . [I]f there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.

*Id.* at 374.

At trial, to establish an assignment appellant relied primarily on the testimony of William Baker, Jr., president of Bowman and Company and past vice-president of the dissolved Bowman Feed.[3] In testifying about disposition of Bowman Feed's assets at dissolution, Baker said:

[W]e sold most of them [the assets] to Charles Bowman & Company. They bought the furniture and fixtures. I think we sold the automobile outright, if I remember right. We tried to liquidate the assets by selling them to Charles Bowman & Company, and we also sold the note [i. e. the note on which liability was stipulated] that Ward Erwin owed Bowman Feed Products to Charles Bowman & Company.

From this testimony, particularly from the statement that "we tried to liquidate the assets by selling them to Charles Bowman & Company," a jury could infer that the contractual right to royalties, a corporate asset, had been assigned or transferred to Bowman and Company. Clearly Bowman and Company's case would be stronger if Baker, in enumerating the specific assets transferred, had referred to the royalties. Nevertheless, in light of our standard of review we conclude that Baker's general statement placed in context by other evidence discussed *infra,* gives rise to an inference that a transfer did occur.

While Baker's testimony is the most direct evidence of transfer, the record as a whole points to some form of assignment. For example, Willis Diekema, past secretary-treasurer of Bowman Feed, testified that the management and ownership of the two corporations were identical, and that for a time the two corporations existed contemporaneously. Baker inferred- that the corporate distinction between Bowman Feed and Bowman and Company was more of form than substance by his testimony that Bowman Feed was dissolved solely to simplify the accounting complexities of maintaining two distinct entities. From April 29, 1965 into 1969, Erwin routinely sent the royalty checks, totaling about $72,000, to Bowman Feed, and these were routinely endorsed by Bowman and Company and cleared through Erwin's bank. One check, dated June 2, 1965, was made payable to Bowman and Company. Collectively these sustained course of dealings, coupled with the identity of ownership and management of the two corporations, inferentially point to a consensual arrangement between the two corporations whereby Bowman and Company succeeded to the royalty rights.

The inference of consensual arrangement is particularly justifiable in light of the peculiar circumstances of this case. As noted, the management of the two corporations was substantially identical. Thus Charles Bowman, as president of Bowman Feed, could have assigned the royalty rights to Charles Bowman, as president of Bowman and Company. A requirement that he say aloud to himself that he hereby assigned the rights to himself would rival the old requirement of livery of seisin, by which transfer of land had to be accompanied by delivery of a clod of earth. A more realistic inference is that during the three-year dissolution period, the two corporations manifested their consent to an assignment of the royalty rights

---

3. Charles Bowman was president of both corporations until his death in 1970.

through their sustained course of dealing.[4]

Bowman and Company attempted to introduce written proof of an assignment, consisting of an instrument dated June 22, 1966, which recited that for good and valuable consideration Bowman Feed had assigned to Bowman and Company the contract rights. On examination by Erwin's counsel, Diekema, the secretary-treasurer, revealed that the instrument had been executed in 1970, after Erwin filed his counterclaim, and had been antedated on advice of Michigan attorneys who no longer represented Bowman and Company. On cross-examination, counsel for Bowman and Company attempted to establish that while the instrument itself was a "legal nullity" it nevertheless tended to indicate that an oral assignment had been made during dissolution proceedings. The court excluded the proffered testimony partly on the ground that the minutes of the corporate meeting would be the best evidence of a transfer and partly on the ground that an oral assignment would not effectively transfer the contract rights.[5] Of course, oral assignments of contractual rights are recognized in Michigan. The District Judge's misconception of Michigan law at this crucial stage of the proceedings may have prevented introduction of valid testimony essential to Bowman and Company's case. Under these circumstances, the in-

terests of justice would be better served by a new trial.

### III. The Contract

Evidence of assignment in fact mandates a new trial only if the contract creating the royalty rights does not forbid their assignment. See Detroit Greyhound Employees Fed. Credit Union v. Aetna Life Ins. Co., 381 Mich. 683, 167 N.W.2d 274 (Mich.1969). The contract provides:

This license is assignable by Bowman only with the written consent of Erwin. However, this agreement shall be binding upon any other corporation or organization than Bowman controlled by the persons now shareholders in Bowman. Except as otherwise provided in this agreement, this agreement shall be binding upon and inure to the benefits of the heirs, executors, successors and assigns to the parties of this agreement.

Unquestionably Erwin did not consent to an assignment of the royalty rights. The law draws a distinction, however, between assignment of performance due under a contract and assignment of the right to receive contractual payments. As a general rule:

Although the prohibition of assignment may be so clearly stated to be applicable to the right as well as the duty as to preclude another interpretation, it will generally be found to re-

---

4. "[N]o physical transition of the thing involved, or the paper representing it, is necessary in order to pass title, as acts, or words, or both, showing an intention to part with title and dominion over the thing or paper calling therefor are sufficient." 3 Williston, The Law of Contracts § 430, at 172 (3d ed. 1960).

5. Out of the presence of the jury, the District Judge inferred that he did not think that the purported written assignment would be evidence that an assignment had been made. The colloquy between the District Judge and counsel for Bowman Company was as follows:

"THE COURT: . . . I think it [the purported written assignment] is a nullity. I do not think it is worth the paper it is written on.
MR. MARTINEZ: We don't believe there is any necessity for a written assignment. That is our position. There is no necessity for any assignment and there is an implied assignment, if nothing else.
THE COURT: How can a corporation do anything if they don't do it in writing?
Corporations, I don't think, can act in the air, so to speak. There has to be some act, some conduct."

late only to the delegation of performance by the [promisor].

3 Williston, The Law of Contracts § 422, at 138–39 (3d ed. 1960).

The right to recover compensation under a contract which is still executory and which depends upon the fulfillment of its stipulations by the assignor or by the assignee, may be assigned.

4 Pomeroy, Equity Jurisprudence § 1275a, at 794 (5th ed. 1941).

While the right to compensation may thus be assigned even before it is earned, the right of the other party to the personal services of the one agreeing to render them, it is said, cannot be transferred . . . . After the contract has been executed by himself he can assign the right to recover compensation.

*Id.* at 796.

When a contract contains express words forbidding one party to assign the contract, usually more is intended than that he shall not repudiate his duty by assigning it to another and escaping; it indicates that his duty is one he cannot perform vicariously by delegating the performance to another. Such a provision makes the party's reciprocal right to compensation dependent and conditional on his own personal performance of the agreed exchange; but it does not make his right to compensation nonassignable, either before or after he has performed the condition.

4 Corbin, The Law of Contracts § 872, at 484 (1951).

■■■■■ Gauged by the rules favoring assignability of proceeds and the Michigan rule requiring the plainest words to bar assignment, Detroit Greyhound Employees Fed. Credit Union v. Aetna Life Ins. Co., *supra*, the contract as a matter of law permitted assignment of Bowman Feed's right to the royalties. Under the original 1951 contract, Bowman Feed acquired the license to manufacture dog food pursuant to Erwin's secret process.

The parties, by providing that the license was not assignable without Erwin's consent, unequivocally reflected their concern that the process should remain secret and that Bowman Feed should be the exclusive sales agency. In 1964, by amendment to the contract, Bowman Feed relinquished its right to produce dog food with the secret additive in return for a percentage of profits made by Erwin in marketing the process. Therefore, at least after 1964, Bowman Feed could assign the proceeds without endangering the secretiveness of the process. Against this background, the use of the word "license" in the contractual prohibition against assignment indeed meant license and not proceeds. On remand the District Judge should find for Bowman and Company on this issue as a matter of law. See Ammons v. Franklin Life Ins. Co., 348 F.2d 414, 416 (5th Cir. 1965).

## IV. Estoppel and succession

■■■■■ Because we remand this case on evidentiary grounds, we do not decide whether Erwin is estopped to assert nonassignment because of his repetitive acquiescence in Bowman and Company's endorsing the checks made payable to Bowman Feed. The District Judge orally justified the directed verdict by referring primarily to the lack of assignment, only briefly mentioning estoppel, and the briefs do not distinguish between estoppel to assert contractual prohibition of assignment and estoppel to assert that an assignment never occurred. Our disposition of this issue will be aided by both fuller argument below and entry of written conclusions of law. Nor do we reach the issue concerning Bowman and Company's acquisition of the royalty rights by virtue of its status as a successor corporation. Normally the word "successor" may have a particular meaning as used in the contract. "The word 'successors,' in a grant to a corporation and its successors, is to be interpreted according to the surrounding circumstances," and "[o]ne corporation may be the successor of another within the

meaning of such a provision although there is neither merger nor a consolidation." 15 W. Fletcher, The Law of Private Corporations § 7203 (Rev. ed. 1961).

Reversed and remanded.

SIMPSON, Circuit Judge (dissenting):

I would affirm the judgment of the district court based on the directed verdict in favor of C. Ward Erwin, the defendant-appellee. I think the district judge correctly assessed the state of the evidence before the jury, when in granting the motion for directed verdict, he held as a matter of law that there was never any assignment of the contract or of its proceeds, and further held that estoppel did not arise from the facts present. It seems clear to me that at no time when Bowman Feed Products had corporate existence was the contract or its proceeds assigned by that corporation to Charles L. Bowman & Company.

I respectfully dissent.