# STATE OF MICHIGAN

# COURT OF APPEALS

RIVERSBEND REHABILITATION, INC.,

        Plaintiff-Appellant,

v

JEFFREY ENOS,

        Defendant-Appellee.

UNPUBLISHED
October 29, 2015

No. 321631
Isabella Circuit Court
LC No. 2013-010619-CK

Before: M. J. KELLY, P.J., and MURRAY and SHAPIRO, JJ.

PER CURIAM.

In this contract dispute, plaintiff, Riversbend Rehabilitation, Inc, appeals by right the trial court's opinion and judgment in favor of defendant, Jeffrey Enos. Riversbend argues on appeal that the trial court erred in several respects, which warrant reversal. For the reasons more fully explained below, we conclude that there were no errors warranting relief. Accordingly, we affirm.

## I. BASIC FACTS

Michael Wilson owns Riversbend, which provides rehabilitation services to the general public. Before the dispute in this case, Wilson was married to Enos' sister.

In 2006, Riversbend entered into an agreement with Enos in which Riversbend agreed to support Enos while he attended school to become a physical therapist. Specifically, Riversbend agreed to pay Enos a salary of $40,000 per year, which Enos would repay while working for Riversbend after his graduation. The parties did not provide specific terms for repayment—that is, they did not provide for periodic payments of interest and principal. Instead, they agreed that Enos would repay the prepaid salary by working for Riversbend. The agreement gave the following example: "If the going rate of a [physical therapist] is $80,000.00 at time of graduation then [Enos] may choose to reduce his salary to $40,000 or any other reasonable and acceptable amount until the payback has been satisfied." As another example, the agreement provided: "Lets [sic] say it takes 5 years for [Enos] to graduate, $200,000 in salary has been utilized, [Enos] can pay it [b]ack in 5 years of employment or 1 year or 10 years, but during that time is committed to work for" Riversbend. Additionally, the agreement stated that "[i]f [Enos] wants to terminate this contract," "he must set up an acceptable payback schedule for the monies utilized." The agreement also provided that Riversbend would pay Enos' tuition, which he had no obligation to repay.

-1-

Wilson and Enos' sister divorced in early 2011. Nevertheless, in October of that same year, Riversbend and Enos executed a "Confirmation of Agreement." By that time, Riversbend had already advanced Enos more than $200,000 in salary. In the confirmation, Riversbend and Enos reaffirmed their prior agreement and stated that "following [Enos]'s college graduation and the start of his agreed to employment with Riversbend, an agreed upon portion of his then established salary will be deferred and considered a repayment against the advance salary amounts received." Enos was to "remain employed at Riversbend for a sufficient period of time to establish deferral amounts sufficient to repay the entire amount of advanced salaries." In the event that Enos chose not to complete his education or work for Riversbend, the confirmation provided that Enos must make arrangements to repay the advanced salary:

> In the event [Enos] terminates his college attendance prior to graduation; graduates from college but chooses not to become employed at Riversbend; terminates his employment with Riversbend prior to the full repayment of the advanced salary amount or otherwise breaches his obligations then [Enos] shall repay Riversbend the advanced salary amount pursuant to the terms of a **Promissory Note** attached hereto and executed contemporaneous with this **Confirmation Of Agreement Between Riversbend And Jeff Enos.**

The parties executed a promissory note for "$212,307.64 and any additional advances made by" Riversbend to Enos. The note provided the terms by which Enos agreed to repay Riversbend:

> 1.     Following [Enos]'s college graduation and the start of his agreed to employment with Riversbend, an agreed upon portion of his then established salary will be deferred and considered a repayment against the advanced salary amounts received. It is intended between the parties that [Enos] will remain employed at Riversbend for a sufficient period of time to establish deferral amounts sufficient to repay the entire amount of the advanced salaries; or,
>
> 2.     In the event [Enos] terminates his college attendance prior to graduation; graduates from college but chooses not to become employed at Riversbend terminates his employment with Riversbend prior to the full repayment of the advanced salary amount or otherwise breaches his obligations ("the triggering event"), then [Enos] shall repay Riversbend the advanced salary amount pursuant to the terms of this **Promissory Note.** [Enos] shall make equal monthly payments amortized so that the repayment of the entire advanced salary amount be made no later than five years from the date of the "the triggering event". The first payment is due thirty days following the date of the "the triggering event" and a similar payment due each thirty days thereafter.

It is undisputed that the relationship between Wilson and Enos deteriorated in 2012. In June, Wilson asked Enos to purchase $300,000 in life insurance in case he died before he could repay Riversbend. Enos applied for life insurance in July. In August, Wilson e-mailed Enos that he felt it "would be in everyone's best interest for you to work at a different place." He explained:

This decision was based on and not limited to the following, i.e. the estrangement that you have had towards [R]iversbend and me, especially since the divorce, which really affect my perception of you [sic] loyalty motives. Lack of communication, lack of accountability, your avoidance and estrangement with current key [R]iversbend staff, Your demands for personal items that where [sic] between me and [your sister] and your dad, especially in light for all I/Riversbend has done for you. With all that in mind, I still honored my side of the agreement, but I think it is best for some time to allow healing.

Wilson further wrote that he would have his lawyer draft amendments to the agreements.

Enos responded later that same month and stated that he was "[s]orry to hear about [Wilson's] decision to release [him] from [his] obligation to" Riversbend. He subsequently wrote to Wilson and explained his position on Wilson's decision not to employ him at Riversbend:

I am truly troubled by our recent correspondence. I have been struggling to find the appropriate words to convey to you my feelings given your request that I not work for Riversbend upon graduation. First and foremost I truly appreciate all that you have done for me. I understand it has been a great undertaking and burden for you and Riversbend to support me the way you have. I could not have accomplished what I have, personally or professionally, without your support.

I have taken on a great deal of debt to you which I agreed to do base [sic] in large part on the promise of employment upon graduation. I am not sure I would have pursued a doctoral degree and taken on this financial responsibility had the circumstances been different.

At this point I think it is too early to make a final decision as to the future of our arrangement. This would be contingent on my ability to find employment elsewhere which would pay at least equal to what I could earn at Riversbend. And at such time make arrangements for the release of any obligations to work for [Riversbend].

In September and December 2012, Wilson emailed Enos a proposed amended agreement and promissory note reflecting that Enos would not work for Riversbend. However, Enos did not execute them. Thereafter, Riversbend did not pay Enos' tuition for the Fall 2012 and Spring 2013 terms. It also ceased paying Enos a salary in December 2012. Enos in turn refused to repay the salary that Riversbend advanced to him.

Riversbend sued Enos for refusing to repay the advanced salary in February 2013. Riversbend alleged claims of breach of contract, promissory estoppel, unjust enrichment, and breach of promissory note. In lieu of trial, the parties agreed to submit the claims to the trial court for a decision on the basis of joint exhibits and trial briefs. In April 2014, the trial court issued its opinion and judgment in Enos' favor.

The trial court first determined that Riversbend's claims for promissory estoppel and unjust enrichment failed as a matter of law: "These causes of action cannot be maintained when there is a written contract covering the same subject matter, which is the case here." Regarding Riversbend's contract claim, the court found that Riversbend breached the agreement when Wilson informed Enos that he would not be working for Riversbend, refused to pay his tuition for Fall 2012 and Spring 2013, and removed him from its payroll. The court rejected Riversbend's argument that it had substantially performed under the contract: "[a]n important element of the contract between the parties was the promise that [Enos] would be granted employment after graduation." By refusing to employ Enos after his graduation, the court stated, Riversbend breached the agreement in a substantial way.

The court also concluded that—even if Riversbend had not first breached the agreement—Riversbend failed to establish that Enos breached the agreement. The court found that Enos was "ready, willing, and able to perform his obligations" but was prevented from doing so by Riversbend's decision to refuse to employ him. The court added that the contract had not contemplated a breach by Riversbend. Rather, the agreement specifically contemplated that Enos was obligated to repay Riversbend by working for it. The agreement further provided that, in the alternative, Enos would be obligated to repay the advanced salary if he took certain specified actions, which the promissory note referred to as "triggering events." He would be obligated to repay if he stopped attending school, graduated but chose not to work for Riversbend, ended his employment with Riversbend before full repayment, "or otherwise breache[d] his obligations." Because "[n]one of the conditions that would trigger a different payment method occurred," the trial court reasoned, Enos had not breached the contract.

Finally, the court rejected Riversbend's contention that Enos' failure to sign the amendments amounted to anticipatory repudiation. The court explained that Enos was under "no obligation to agree to [Riversbend's] modification of the agreement."

For the reasons stated in its opinion and order, the trial court dismissed Riversbend's claims for promissory estoppel and unjust enrichment, and entered judgment of no cause of action on Riversbend's remaining claims.

Riversbend now appeals in this Court.

## II. CONTRACT CLAIMS

Riversbend first argues that the trial court erred in construing the contract; specifically, it argues that the contract unambiguously required Enos to repay Riversbend under any circumstance. This Court reviews de novo the proper interpretation of a contract. *Coates v Bastian Bros, Inc*, 276 Mich App 498, 503; 741 NW2d 539 (2007).

This Court's objective in interpreting a contract is to determine the intent of the parties by examining the language of the contract. *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008). This Court must construe the contract according to its plain and ordinary meaning and must enforce an unambiguous contract as written. *Id.*

In the 2006 agreement, Riversbend agreed to pay Enos a salary of $40,000 per year while in school and Enos agreed to repay the advanced salary once he graduated and started working. The terms regarding repayment were not explicitly set forth, although the agreement gave examples of methods of repayment. The agreement also provided that if Enos chose to terminate the contract, "he must set up an acceptable payback schedule for the monies utilized." The agreement did not explicitly state that Enos was responsible for repaying the advanced salary under any and all circumstances or in the event that Riversbend breached the contract.

The 2011 "Confirmation of Agreement" reiterated that "following [Enos]'s college graduation and the start of his agreed to employment with Riversbend, an agreed upon portion of his then established salary will be deferred and considered a repayment against the advance salary amounts received." Enos was to "remain employed at Riversbend for a sufficient period of time to establish deferral amounts sufficient to repay the entire amount of advanced salaries." In the event that Enos could not fulfill his obligations, the confirmation provided for repayment, and the parties executed a promissory note that also stated that Enos would be required to repay Riversbend once he began working for it or if he breached the agreement. Again, the confirmation agreement and note did not explicitly provide that Enos would be required to repay Riversbend under any and all circumstances.

Riversbend argues that "[a] simple reading of the agreement (all agreements) is that whether [Enos] works for Riversbend, or if he does not, some repayment structure will be determined." This argument is unsupported by the terms of the actual agreements. As the trial court recognized, the parties did not contemplate what would happen if Riversbend refused to employ Enos or refused to make the required payments. The agreements nevertheless clearly delineated the circumstances under which Enos' obligation to repay the advanced salary would arise and those circumstances did not include Riversbend's refusal to employ Enos or make the contemplated payments. Enos had an obligation to repay Riversbend by accepting employment with Riversbend, which repayment would be made through acceptance of a reduced salary for a period of time, or, in the event that Enos breached the agreement or elected not to work for Riversbend, he had an obligation to repay Riversbend with payments over time. The evidence showed that Enos did not refuse employment with Riversbend or otherwise engage in acts that would trigger his obligation to repay the advanced salary. Accordingly, under the plain terms of his agreement with Riversbend, Enos had no obligation to repay the advanced salary.

Riversbend suggests that the conduct of the parties served to modify the contract. It cites evidence in the form of e-mails in which the parties purportedly "continued to negotiate re-payment options" and the fact that Enos purchased life insurance, as requested. Although the parties' understanding of their obligations under a contract can shed light on the correct interpretation of the contract, this principle only applies to the interpretation of ambiguous contract language. See *Detroit Greyhound Employee Fed Credit Union v Aetna Life Ins Co*, 381 Mich 683, 685-686; 167 NW2d 274 (1969). The contract in this case clearly provided specific circumstances that would trigger Enos' obligation to repay—it did not state that Enos would be obligated to repay Riversbend under any and all circumstances. That Enos may have mistakenly believed that he had some obligation to repay, but later declined to do so, does not serve to change the contract language.

Riversbend also argues that the trial court erred in finding that its breach of its promise to employ Enos after he graduated was substantial. Whether the breach of a contract is "substantial" is a question of fact, which we review for clear error. *Omnicom of Michigan v Giannetti Investment Co*, 221 Mich App 341, 348; 561 NW2d 138 (1997). "A finding is clearly erroneous if there is no evidentiary support for it or if this Court is left with a definite and firm conviction that a mistake has been made." *Chelsea Investment Group LLC v Chelsea*, 288 Mich App 239, 251; 792 NW2d 781 (2010). We give great deference to the trial court's findings of fact, "because it is in a better position to examine the facts." *Id*.

"The rule in Michigan is that one who first breaches a contract cannot maintain an action against the other contracting party for his subsequent breach or failure to perform." *Able Demolition v Pontiac*, 275 Mich App 577, 585; 739 NW2d 696 (2007) (quotation marks and citations omitted). For this rule to apply, the breach must have been "substantial." *Id*. In determining whether a breach was substantial, "a trial court considers whether the nonbreaching party obtained the benefit which he or she reasonably expected to receive." *Id*. (quotation marks and citation omitted).

The trial court found that Riversbend breached the contract first when Wilson notified Enos that Riversbend would not employ him. The court concluded that "[a]n important element of the contract between the parties was the promise that [Enos] would be granted employment after graduation." The court premised this finding on Enos' e-mail in which he wrote that he might not have gone to school to become a physical therapist without the promise of employment following graduation. The court added that the parties themselves emphasized the importance of Enos' employment with Riversbend by providing that "the method of repayment in the contract was based on the idea that [Enos] would work for [Riversbend] until all money had been repaid."

The trial court's finding was not clearly erroneous. Enos' correspondence indicated that he promised to go to school and take on the debt at issue in significant part—and perhaps exclusively—because Riversbend promised to employ him after graduation. Moreover, the repeated references in the agreements to Enos' employment with Riversbend strongly showed that Riversbend also considered this to be an essential part of the bargain. Indeed, the contract terms require repayment on less favorable terms if Enos chooses not to work for Riversbend. Enos—the nonbreaching party—did not obtain the central benefit of the contract that he reasonably expected to receive: he did not receive the promised employment at a level of compensation sufficient to meet his obligations. Under these circumstances, we cannot conclude that the trial court clearly erred when it found that Riversbend's breach was substantial.

Finally, we reject Riversbend's suggestion that Enos' initial indications that he would not repay Riversbend after it refused to employ him and that Enos' failure to sign the amendments to the agreements somehow amount to an anticipatory repudiation of the contract. As the trial court stated, Enos had no obligation to accept Riversbend's proposed changes. Rather, he had every right to rely on the contracts to which he and Riversbend mutually agreed. Riversbend cites no authority for the proposition that a party anticipatorily repudiates a contract by refusing to concede to the other party's demand to modify the agreement.

Riversbend complains that the trial court's decision caused "an unreasonable and unconscionable result" by allowing Enos to retain approximately $240,000 in prepaid salary and $71,000 in tuition without ever working for Riversbend or being required to repay. Riversbend's lamentations belie the facts. As the trial court found, Enos was ready, willing, and able to work for Riversbend; it was Riversbend who prevented Enos from performing under the agreement. Despite having deprived Enos of his contemplated source of income in violation of the parties' agreement, Riversbend now demands that Enos repay his debt under new terms and without any further obligations to him. But that is not the agreement that Riversbend made with Enos. The agreement provided that Riversbend would employ Enos and Enos would repay Riversbend through reduced compensation. If—and only if—Enos took certain specified actions would Enos have any obligation to repay other than by working for Riversbend. The trial court did not clearly err when it found that Enos did not take any of those actions. Had it so desired, Riversbend could have included a provision in the agreement concerning its right to refuse Enos employment or terminate his employment before Enos completed repaying. It did not do so. It should not now be heard to complain about the shortcomings of its own agreement or the equities of the result occasioned by its decision to breach that agreement. See, e.g., *Haines v Gibson*, 115 Mich 131, 134; 73 NW 126 (1897) ("If, therefore, this was a 'jug-handled' or 'one-sided' contract, as defendants' counsel call it, all the parties entered into it with complete knowledge of its terms, and cannot now be heard to complain.").

## IV. CONCLUSION

The trial court did not clearly err when it found that Riversbend breached the agreements involved here and that the breach was substantial. Moreover, because the agreements unambiguously provided that Enos did not have an obligation to repay under the circumstances, the trial court correctly determined that Riversbend's contract claims failed as a matter of law. Given our resolution of these issues, we decline to address Riversbend's remaining arguments.

Affirmed. As the prevailing party, Enos may tax his costs. MCR 7.219(A).

/s/ Michael J. Kelly
/s/ Christopher M. Murray