**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 16a0680n.06

**Case No. 15-2217**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| CONTINENTAL CASUALTY COMPANY; COLUMBIA CASUALTY COMPANY, | ) ) ) | FILED Dec 16, 2016 DEBORAH S. HUNT, Clerk |
| *Plaintiffs-Appellees*, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) ) | COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| INDIAN HEAD INDUSTRIES, INCORPORATED, | ) ) ) | |
| *Defendant-Appellant*. | ) | O P I N I O N |

BEFORE:     COLE, Chief Judge; DAUGHTREY and MOORE, Circuit Judges.

COLE, Chief Judge.  This case involves both contract interpretation and a determination of the proper method, under Michigan law, of cost allocation among insureds and insurers. Defendant, Indian Head Industries, Inc. ("Indian Head"), appeals the district court's summary judgment orders in favor of one of the plaintiffs, Continental Casualty Company ("Continental"). In separate orders, the district court found that Indian Head's insurance policies with Continental did not cover liabilities assumed by contract, that Continental had to provide only a pro rata share of indemnification damages and defense costs, and that Indian Head should reimburse Continental for payments made in excess of its obligations.  Indian Head challenges these orders, arguing that its liabilities assumed by contract qualify for coverage under the insurance policy terms, that the district court failed to properly apply state law requiring a joint and several

liability allocation of damages and costs, and that reimbursement is improper where the terms of the policies do not provide for it. We find no reversible error and affirm the district court's judgments with respect to pro rata allocation and reimbursement, but remand for consideration of Continental's liabilities from those injuries that preexisted insurance coverage but were ongoing during the policy period.

## I. BACKGROUND

### A. Factual Background

In March 1984, Indian Head entered into a written agreement ("1984 Agreement") to acquire a gasket manufacturing division of Thyssen-Bornemisza, Inc., Detroit Gasket & Manufacturing Co. ("Detroit Gasket"). In the agreement, Indian Head purchased Detroit Gasket's assets and product names. The 1984 Agreement also provided that Indian Head would assume all liabilities and obligations, including products liability, arising out of or relating to the business and operations of the acquisitions.

Indian Head then purchased three consecutive liability insurance policies from Continental from April 1984 until April 1987. These insurance policies included bodily injury coverage which provided in relevant part:

> [Continental] will pay on behalf of [Indian Head] all sums which [Indian Head] shall become legally obligated to pay as damages because of . . . bodily injury . . . to which this insurance applies, caused by an occurrence, and [Continental] shall have the right and duty to defend any suit against [Indian Head] seeking damages on account of such bodily injury . . . even if any of the allegations of the suit are groundless, false or fraudulent . . . .

(*See, e.g.*, Policy, R. 81-5, PageID 1129.) The policies defined "bodily injury" as "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom," and "occurrence" as "an accident, including continuous

or repeated exposure to conditions, which results in bodily injury . . . neither expected nor intended from the standpoint of [Indian Head]." (*Id.* at PageID 1127–28.) The policies also included an exclusion ("Exclusion A") to the coverage, which provided "[t]hat this insurance does not apply . . . to liability assumed by the insured under any contract or agreement except an incidental contract . . . ." (*Id.* at PageID 1129.) The policies defined "incidental contract" to include "any oral or written contract or agreement relating to the conduct of the named insured's business," with the exception that the coverage would not extend to a "bodily injury . . . for which the insured has assumed liability under any incidental contract, if such injury . . . occurred prior to the execution of the incidental contract." (Endorsement, R. 36-8, PageID 665.)

From 1984 until 1989, Indian Head owned and operated Detroit Gasket while it manufactured and sold automotive gaskets containing asbestos. Numerous claimants brought lawsuits against Indian Head alleging bodily injury from exposure to the asbestos-containing products manufactured by Indian Head and its predecessor. In 1994, Indian Head began submitting these lawsuits to Continental for defense and indemnification under the insurance policies held from 1984 to 1987. For nine years, Continental fulfilled Indian Head's requests without reserving any rights, applying the insurance coverage to tens of thousands of lawsuits brought against Indian Head.

In October 2005, Continental stated in a letter to Indian Head that Continental was not obligated to cover all defense and indemnification amounts, but rather, only to "pay its pro rata share." Continental also included a reservation of rights in the letter that listed the right to seek reimbursement for excess payments.

## B. Procedural History

On October 12, 2005, Continental and its subsidiary, Columbia Casualty Co., filed a complaint in the United States District Court for the Eastern District of Michigan, seeking a declaratory judgment of their rights and responsibilities under Indian Head's insurance policies. Among other claims, Continental sought a judgment that Exclusion A barred coverage of any liabilities assumed by the 1984 Agreement. Continental also sought declaratory judgments that the definition of "bodily injury" restricted Continental's liability for bodily injuries to injuries occurring during the insurance period, and that defense costs must also be apportioned for suits based on injuries occurring during the insurance period. Indian Head contested Continental's claims, asserting that Continental had waived its rights and was estopped from asserting coverage limits.

Following cross-motions for summary judgment, the district court issued two separate orders. First, the court granted Continental summary judgment on the issue of allocation, ordering that "the pro rata time-on-the-risk method of allocation" would apply. The court then denied Indian Head summary judgment on the applicability of Exclusion A to the 1984 Agreement, finding that Exclusion A plainly and unambiguously excluded liability assumed under any contract or agreement.

After the court issued its orders, the parties stipulated to the classes of suits underlying the insurance claims since Continental's reservation of rights. The classes were based on the claimed dates of injury and detailed the costs incurred in each instance. The parties then submitted cross-motions for summary judgment. Continental sought reimbursement for payments issued in excess of its pro rata share and Indian Head reiterated that pro rata allocation should not apply. Based on the stipulated classes and the court's prior determination that pro

rata allocation would apply, the district court ordered that Indian Head pay Continental approximately $2.4 million in restitution.

Indian Head appealed the decision of the district court to this court. Before the parties submitted their briefs, Indian Head moved to certify the question of whether pro rata allocation should be used to the Michigan Supreme Court. Following Continental's opposition, we denied the motion.

## II. ANALYSIS

### A. Standard of Review

We review the district court's grant of summary judgment and contract interpretation de novo. *Hobart Corp. v. Waste Mgmt. of Ohio, Inc.*, 758 F.3d 757, 765 (6th Cir. 2014); *Cyber Sols. Int'l, LLC v. Pro Mktg. Sales, Inc.*, 634 F. App'x 557, 562 (6th Cir. 2016). Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). That is, summary judgment should not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At this stage of the litigation, the court must also view the facts and draw reasonable inferences "in the light most favorable" to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)).

### B. Applicable Law

To decide on Indian Head's appeal from the district court, we must first determine the applicable law at issue. In diversity suits such as this, federal courts must apply the choice-of-law rules and substantive law of the forum state. *CenTra, Inc. v. Estrin*, 538 F.3d 402, 409 (6th Cir. 2008). Indian Head and Continental both agree that Michigan law applies in this case as the policies were executed in Michigan.

In applying state law, this court must follow the decisions of the state's highest court on the issue, or, where the highest court has not decided, attempt to determine how the state court would decide if presented with the question, using "all available data, including the decisional law of the state's lower courts." *Talley v. State Farm Fire and Cas. Co.*, 223 F.3d 323, 326 (6th Cir. 2000); *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 517 (6th Cir. 2001). In doing so, we may not disregard the forum state's appellate court decisions on the issue, whether published or unpublished, unless convincing evidence shows the highest court would decide otherwise. *Id.*

## C. Michigan Contract Interpretation

The Michigan Supreme Court has previously established that "it is the policy language as applied to the specific facts in a given case that determines [insurance] coverage." *Gelman Scis., Inc. v. Fidelity and Cas. Co. of N.Y.*, 456 Mich. 305, 316 (1998), *overruled on other grounds by Wilkie v. Auto-Owners Ins. Co.*, 469 Mich. 41 (2003). Coverage is first assessed by identifying whether a claim falls within the terms of a policy so as to trigger coverage, and then by determining whether any applicable exclusion prevents the policy from applying. *Alticor, Inc. v. Nat'l Union Fire Ins. Co. of Pa.*, 916 F. Supp. 2d 813, 822 (W.D. Mich. 2013) (citing *Heniser v. Frankenmuth Mut. Ins.*, 449 Mich. 155, 172 (1995)). Where the language is clear and unambiguous, this court must give effect to its terms as written without any attempt to alter or vary the meaning. *Alticor*, 916 F. Supp. 2d at 822. Ambiguous provisions must be interpreted in favor of coverage for the policyholder. *Gelman*, 456 Mich. at 318.

This court is required to begin its review of the contract by "determin[ing] what the agreement was and effectuat[ing] the intent of the parties." *Auto-Owners Ins. Co. v. Churchman*, 440 Mich. 560, 566 (1992). In doing so, we must look at the contract as a whole and give meaning to all terms either by the definitions within the policy or by assigning the terms their ordinary meaning. *Id.*; *Grp. Ins. Co. of Mich. v. Czopek*, 440 Mich. 590, 596 (1992).

**D. The Application of Exclusion A to Injuries From Before the Policy Period**

    *1. Exclusion A is Clear and Unambiguous*

Indian Head's insurance policies cover all sums that Indian Head becomes legally obligated to pay as a result of damages or defense costs. However, the policies bar, through Exclusion A, any injury liability assumed "under any contract or agreement except an incidental contract." (*See, e.g.*, Policy, R. 81-5, PageID 1127–29.) The "incidental contract" may be an oral or written agreement, but must "relat[e] to the conduct of [Indian Head's] business," and the injury cannot preexist the incidental contract. (Endorsement, R. 36-8, PageID 665.)

In an order denying Indian Head summary judgment, the district court found that the terms of Exclusion A plainly and unambiguously excluded coverage for liabilities assumed under the 1984 Agreement, noting that there is no ambiguity in the language of the policy. On appeal, Indian Head claims that the court failed to consider its argument that Exclusion A did not apply because the agreement was an incidental contract. This argument, however, was not fully raised in briefing with the district court. In its order, the court noted that neither party suggested that the agreement was an incidental contract. However, Indian Head did argue that the agreement was an incidental contract in earlier, unrelated pleadings regarding allocation. Thus, we must determine whether this argument was sufficiently raised before the district court, and, if not, whether we have any authority to consider the argument.

This court has established that we will not consider arguments raised for the first time on appeal. *City Mgmt. Corp. v. U.S. Chem. Co., Inc.*, 43 F.3d 244, 255 (6th Cir. 1994). A party appealing summary judgment based on arguments not presented to the lower court has not preserved such arguments for appellate review, even if the arguments were previously included in other pleadings in the case. *See Mingus v. Butler*, 591 F.3d 474, 483–84 (6th Cir. 2010) (finding an argument included in an answer to a complaint but not in the motion seeking

summary judgment as not sufficiently presented for appellate review); *see also Benahmed v. Houston Cas. Co.*, 486 F. App'x 508, 514 (6th Cir. 2012). An exception is allowed, however, for questions of law, or where considering the argument would serve to avoid injustice. *Stromback v. New Line Cinema*, 384 F.3d 283, 304 n.8 (6th Cir. 2004) (citing *United Food & Commercial Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 360 n.9 (6th Cir. 1998)).

In this case, even though the qualification of the 1984 Agreement as an incidental contract was highly relevant to determining the application of Exclusion A, Indian Head failed to present this argument when it submitted its motion for summary judgment. Therefore, this court considers the argument insufficiently preserved for appellate review. *See City Mgmt. Corp.*, 43 F.3d at 255. However, because the argument raises a question of law, we find that we still have the authority to consider the argument. *See Stromback*, 384 F.3d at 304 n.8.

The policies at issue provide an expansive definition for incidental contracts. In particular, while the policies originally defined "incidental contract" to include only specific types of contracts, the policies were subsequently amended through an endorsement to broaden the definition to "any oral or written contract or agreement relating to the conduct of the named insured's business."[1] (Endorsement, R. 36-8, PageID 665.)

---

[1] The original definition of incidental contract was limited to "any written lease of premises, easement agreement . . . undertaking to indemnify a municipality required by municipal ordinance . . . sidetrack agreement or elevator maintenance agreement." (*See, e.g.*, Policy, R.81-3, PageID 1189.)

Continental contends that the 1984 Agreement is non-incidental, because the agreement assumed the liabilities of Indian Head's predecessor, Thyssen, and therefore related to Thyssen's business and not Indian Head's. Indian Head asserts that when the policies began in April 1984, the assumption of liabilities related to Indian Head's business as it acquired Detroit Gasket in March 1984.

On this question, we find Indian Head's argument more persuasive. As it relates to Exclusion A, the agreement at issue is Indian Head's assumption of the liabilities for the activity of Detroit Gasket, an entity that the 1984 Agreement made part of Indian Head's business. The incidental contract exception to Exclusion A requires only that the agreement relate to the conduct of Indian Head's business. Based on the plain terms of this provision, the assumption of liabilities in the 1984 Agreement would therefore qualify as it related to the past conduct of Detroit Gasket, which as of the date of the agreement was made a part of Indian Head's business. This is not a situation where the liability assumed was for the conduct of an entity never owned by Indian Head. There is also no concern that Continental, as the insurer, was unaware that Detroit Gasket constituted part of Indian Head's business during the policy period. Furthermore, the policy language does not require that the conduct for which liabilities were assumed must have occurred while the entity was part of Indian Head's business. By the terms of the policies, the conduct at issue could be past or future. The policies only require that the conduct be that of the insured's business, which, as previously addressed, is met in this case.

Even accepting the 1984 Agreement as an incidental contract, the policies exclude any assumed liabilities for injuries that occurred before the execution of the agreement. As a result, any injuries that occurred before the agreement would not be covered. Indeed, Indian Head concedes this point. However, there remains a category of injuries not covered by this exclusion.

The parties have stipulated that asbestos-related injuries "occur continuously" from the date of first exposure. Based on this stipulation, even if Exclusion A precludes injuries occurring before the 1984 Agreement, those injuries would continue to cause ongoing injuries that would constitute new injuries occurring after the agreement was executed. These new injuries would thus be entitled to coverage under the incidental contract exception since they would not preexist the making of the contract.

As the district court never considered the incidental contract argument, it did not consider the coverage Indian Head would be entitled to for liabilities assumed by the agreement for injuries that occurred after its execution. This is evidenced by the district court's order that Indian Head reimburse Continental for claims alleging their entire period of exposure predating 1984 without separating those injuries that were still ongoing after the 1984 Agreement. We find that assessing the scope of liabilities attributable to this category of injuries requires further consideration by the district court.

### 2. *Injuries Prior to 1984 Are Not Covered Regardless of the Theory of Liability*

Indian Head also argues that if a suit were brought on a theory of liability other than the 1984 Agreement, then Exclusion A cannot bar coverage of those claims. However, we find this argument ignores that, for coverage to apply in the first instance, the suit would still require triggering the policy coverage. *See Alticor*, 916 F. Supp. 2d at 822. Without such triggering, whether an exclusion applies is irrelevant. *See id.* The policies provide for coverage with the limitation that injuries must have occurred during the policy period. Indian Head agrees with this, acknowledging in its briefs to this court that the policy language requires that an injury occur during the policy period.

Given this limitation, the policies bar coverage of any injuries that occurred before 1984 if those claims are based on a theory of liability other than the 1984 Agreement. As a result, there is no need to consider whether direct liability or successor liability would be possible. Regardless of the standing of individual claimants to bring such a suit against Indian Head, the suit would fail to trigger Indian Head's coverage with Continental.

### 3. Absent Ambiguity, the Plain Meaning of the Contract Controls

Indian Head further disputes the district court's decision that Continental is not bound by its prior performance covering injuries that preexisted 1984. Indian Head notes that under the doctrine of practical construction, Michigan courts assign great weight to prior performance of contractual parties. As Indian Head recognizes though, course of conduct is only relevant when the contract appears ambiguous. *See Detroit Greyhound Emps. Fed. Credit Union v. Aetna Life Ins. Co.*, 381 Mich. 683, 686 (1969). This court has held that such ambiguity only exists where "the language is susceptible to two or more reasonable interpretations." *City of Wyandotte v. Consol. Rail Corp.*, 262 F.3d 581, 585 (6th Cir. 2001). Under Michigan law, where such ambiguity does not exist, the contract's terms as written are controlling, irrespective of contradictory past behavior by the parties. *Dow Chem. Co. v. Associated Indem. Corp.*, 724 F. Supp. 474, 486 (E.D. Mich. 1989).

We find that Indian Head has not asserted that Exclusion A's terms are ambiguous. Consequently, previous acceptance of any claims relating to injuries before 1984 is irrelevant no matter how inconsistent with the terms of the contract that performance may have been.

### E. The Allocation of Indemnity Damages and Defense Costs

There are multiple approaches a court may take in assigning the allocation of damages and costs under an insurance policy. *See Arco Indus. Corp. v. Am. Motorists Ins. Co.*, 232 Mich. App. 146, 160–61 (1998). At issue in this case are two of these possible approaches. The "all

sums" or "joint and several liability" approach considers each insurer of any policy triggered to be liable for the insured's entire loss, including costs falling outside the policy's period. *Id.* at 160. Liable insurers may then seek contribution from other insurers whose policies have been triggered. *Id.* The "time-on-the-risk" or "pro rata" approach assigns liability among the insurers for the triggered policies based on the portion of the underlying injuries that may be associated with each policy so as to make the insurer liable only for the prorated share of injuries. *Id.* at 161.

### 1. *Pro Rata Allocation Is the Appropriate Method*

As an initial matter, Indian Head's practical construction argument is inconsequential as neither party argues that the terms of the policy are ambiguous. Continental's prior conduct would only be relevant were the contracts deemed unclear and ambiguous. *Detroit Greyhound*, 381 Mich. at 686. As neither party argues this to be the case, Continental's prior treatment of the policies is irrelevant.

This court is therefore left only to consider whether the district court correctly applied state law in determining the allocation method. To this question, the Michigan Supreme Court has not yet provided guidance. *See Gelman*, 456 Mich. at 324. This leaves only the language of the policies at issue, the opinions of lower appellate courts, and other suggestions of how Michigan's highest court would rule if presented with the question. *See Ziegler*, 249 F.3d at 517.

### a. The Policy Language Limits Liability to Injuries During the Policy Period

Indian Head argues that the "all sums" language included in the policies is unambiguous and requires the application of the "all sums" method of allocation. Continental asserts that the restriction of coverage to injuries occurring during the policy period limits damages to those that may be attributed to the policy period.

As with other issues raised in this appeal, we begin by reviewing the terms of the policies. Although the reference to "all sums" bears the same terms as the "all sums" allocation method name, Indian Head's assertion ignores the remainder of the provision. The policies provide that Continental is liable for "all sums" for "damages because of . . . bodily injury . . . to which this insurance applies, caused by an occurrence." (*See, e.g.*, Policy, R. 81-5, PageID 1129.) The question is, what bodily injuries are covered? As the district court correctly pointed out, the policy language provides that Continental is only obligated to cover "all sums" for injuries occurring during the policy period. The scope of the coverage cannot be considered without this important limitation. The policy language, when taken in its entirety, thus supports the application of the pro rata method of allocation.

### b. Pro Rata Allocation Is Generally Applied

While the Michigan Supreme Court has not determined which allocation method applies, other courts have concluded that the pro rata method of allocation applies under Michigan law. *See City of Sterling Heights v. United Nat'l Ins. Co.*, 319 F. App'x 357, 361 (6th Cir. 2009); *Decker Mfg. Corp. v. Travelers Indem. Co.*, 106 F. Supp. 3d 892, 895 (W.D. Mich. 2015); *Alticor*, 916 F. Supp. 2d at 832–33; *Stryker Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 4:01-CV-157, 2005 WL 1610663, at *7–8 (W.D. Mich. Jul. 1, 2005); *Century Indem. Co. v. Aero-Motive Co.*, 318 F. Supp. 2d 530, 545 (W.D. Mich. 2003). The Michigan Court of Appeals has recognized in at least three other instances that liability for continuous injuries should be measured on a pro rata basis. *See Arco*, 232 Mich. App. at 165; *Wolverine World Wide, Inc. v. Liberty Mut. Ins. Co.*, No. 260330, 2007 WL 705981, at *3 (Mich. Ct. App. Mar. 8, 2007) (unpublished); *Citizens Ins. Co. ex rel. Elopak Scott, Inc. v. Amerisure Ins. Co.*, No. 2540342005 WL 3179614, at *1 (Mich. Ct. App. Nov. 29, 2005) (unpublished). Indian Head's criticism of *Wolverine* and *Elopak Scott* as being unpublished is unwarranted as this court has previously

affirmed that state appellate court decisions, whether published or not, are relevant to determining how a state supreme court would rule, unless there are persuasive indications that the court would rule otherwise. *Ziegler*, 249 F.3d at 517.

In *Arco*, the Michigan Court of Appeals applied the pro rata method to costs shared among successive insurers for continuous property damage that resulted from pollution. *Arco*, 232 Mich. App. at 161–62. In that case, the policy at issue included similar language to the policies in this case, requiring the insurer to pay "all sums" which the insured became liable for as a result of some injury or property damage occurring during the policy period. *See id.* at 152. The *Arco* court ruled that pro rata allocation should be applied and that applying an "all sums" method of allocation would be contrary to the requirement that coverage only exists for damages occurring during the policy period. *Id.* at 161–62. This conclusion was subsequently reviewed by the Michigan Supreme Court in a split decision. *Arco Indus. Corp. v. Am. Motorists Ins. Co.,* 462 Mich. 896 (2000).

A year later, the Michigan Court of Appeals again took up the issue in *Dow Corning Corp. v. Continental Casualty Co., Inc.*, where it applied an "all sums" approach for the allocation of damages among the manufacturer's insurers. Nos. 200143–200154, 1999 WL 33435067, at *8 (Mich. Ct. App. Oct. 12, 1999) (unpublished). The court emphasized that its holding was grounded in the policy's language, which provided that covered injuries could result from "continuous or repeated exposure[s]" and contained an express provision that the policy would still cover injuries continuing after the termination of the policy. *Id.* at *6–7. Based on this, the court concluded that "[c]learly, the policy provides for indemnification for injuries occurring outside the policy period." *Id.* at *7.

We do not find these different conclusions reached by *Arco* and *Dow Corning* to be contradictory. Indeed, the court in *Dow Corning* noted factual distinctions between the policies being considered by the two courts and confirmed that it was on this basis the *Dow Corning* court refused to adopt *Arco*'s method of allocation. *Id.* at *8. These differences included the *Dow Corning* policy's express coverage of injuries that continued after the end of the policy. *Id.* at *7–8; *Stryker*, 2005 WL 1610663, at *7.

In this case, while Indian Head's policies noted that injuries could occur continuously or repeatedly, the language limited coverage to injuries occurring during the policy period and precluded coverage of those that continued after the policies ended. In this way, we find the Indian Head policies more akin to the language considered by *Arco* than that of *Dow Corning*. Without the additional provision extending coverage beyond the policy period, there is no support for reading the policies as extending coverage to damages arising outside of the policy period.

We find the remaining arguments Indian Head sets forth for why the Michigan Supreme Court would apply an "all sums" approach to be largely irrelevant. Indian Head's criticism of the *Arco* court's consideration of the drafting history of general liability provisions is misplaced as the court was entitled to consider all available information to assess how the Michigan Supreme Court would likely rule on the issue. *See Ziegler*, 249 F.3d at 517. Indian Head's detailed accounts of *Arco*'s procedural history and the negative prior treatment of opinions issued in the case are also unavailing as the review of other issues in the case cannot be used to determine how the Michigan Supreme Court would rule on this particular issue. Further, while we acknowledge that the composition of the Michigan Supreme Court and past treatment of similar questions by particular justices is relevant, the majority of evidence suggests that the

Michigan Supreme Court would most likely apply the pro rata method of allocation. The last time the supreme court was presented with this issue, it elected to affirm the decision in *Arco* by a split decision of six justices, after the *Dow Corning* opinion was issued. *Arco*, 462 Mich. at 896. As a result, the possible difference of opinion by the three justices, which Indian Head identifies, is inconsequential. Moreover, since the review of *Arco*, the Michigan Court of Appeals has elected to apply the pro rata method of allocation in two more instances. *See Wolverine*, 2007 WL 705981, at *3; *Elopak Scott*, 2005 WL 3179614, at *1. This trend suggests that the Michigan Supreme Court would most likely adopt the pro rata method of allocation. We therefore find that the bulk of Michigan case law and available information supports the district court's decision to apply the pro rata method of allocation to damages incurred by Indian Head.

### c. Pro Rata Allocation Is Appropriate for Previously Incurred Defense Costs

Indian Head contests the district court's pro rata allocation of defense costs, arguing that the duty to defend is broader than indemnity obligations and thus requires an insurer to provide a defense so long as allegations may be even arguably covered. According to Indian Head, this prevents defense costs from being prorated unless the entire injury occurred outside of the coverage period.

Indian Head's argument relies on the holding of *Ray Industries, Inc. v. Liberty Mutual Insurance Co.*, 974 F.2d 754 (6th Cir. 1992). In that case, the court considered whether it was appropriate to prorate defense costs for potential litigation that had yet to occur. *Id.* The court concluded that defense costs "[are] not easily apportioned" as they are a service rather than a payment and decided to not prorate the costs among insurers. *Id.* at 770. *Ray Industries* is distinguishable from the case at hand however. Rather than being future, unknown costs, the defense costs in this case have already been incurred by Indian Head. The district court's order

merely allocated the defense costs for those suits based upon Continental's "time-on-the-risk" share for the underlying actions.

The district court's allocation, after the defense costs have been assessed, is in line with how courts have addressed the question of allocation. This court has previously held that, although prorated costs are inappropriate where there is no reasonable means of apportionment between covered and uncovered claims, prorated costs are allowed where the costs may be readily apportioned. *See Ins. Co. of N. Am. v. Forty-Eight Insulations, Inc.*, 633 F.2d 1212, 1224–25 (6th Cir. 1980); *see also Alticor*, 916 F. Supp. 2d at 832 (citing *Budd Co. v. Travelers Indemn. Co.*, 820 F.2d 787, 791 (6th Cir. 1987)). The defense costs at issue in this case have already been incurred and stipulated to between the parties. Therefore, it was readily possible to determine each party's prorated shares. As a result, the district court did not err in prorating the costs.

### 2. *Indian Head Has Failed to Establish Coverage Was Not Available After 1987*

Indian Head argues that in the event that it must reimburse Continental, it should not be required to pay for its share of damages and defense costs for the years after the termination of the insurance policies. According to Indian Head, a company cannot be held liable for its own damages and defense costs for years in which asbestos-related insurance was unavailable. Indian Head asserts that once Continental barred asbestos-related claims from its coverage, Indian Head could no longer obtain coverage for such suits. Continental disputes whether such an exception exists and argues that, in any event, the exception would only apply where insurance is not available from any insurer.

Applying Michigan law, the court in *Decker v. Travelers Indemnity* recognized an exception to holding a policyholder liable for its own damages "where insurance is not available in the marketplace." *Decker*, 106 F. Supp. 3d at 898. The court noted that this exception

requires "[t]he insured bear[] the burden of proving that insurance was not reasonably available to it." *Id.* Moreover, the court further explained that it is not enough that the "same policy type" was not available, but that the insured could not purchase coverage of any policy type that would have "provided similar coverage." *Id.*

Indian Head has only asserted that asbestos-related coverage was no longer available to it after Continental added asbestos exclusions to its policies. We find this insufficient. Continental has pointed to instances where asbestos-related coverage continued to be available to companies until at least 2001. *See John Crane, Inc. v. Admiral Ins. Co.*, 991 N.E.2d 474, 478 (Ill. App. Ct. 2013) (noting the insured had asbestos coverage through 2001). Based on this information, Indian Head has failed to show that asbestos-related coverage from any insurer was unavailable after 1987. The district court, therefore, did not err in allocating to Indian Head its share of damages incurred after 1987.

## F. The Right to Reimbursement for Excess Insurance Payments

Indian Head's final ground of appeal contests the district court's decision granting Continental reimbursement of its previous excess payments. Indian Head criticizes the district court for not providing any case law in support of its ruling, and claims that reimbursement is inappropriate where no policy provision allows for it. Continental disputes this, claiming that it is entitled to reimbursement as a matter of contract, either implied-in-fact or implied-in-law.

The Michigan Supreme Court has yet to rule upon whether an insurer may be entitled to reimbursement where the policy does not provide for it. This leaves this court to consider how the supreme court would likely decide upon the question. *Ziegler*, 249 F.3d at 517. The Sixth Circuit has found under the law of other states that insurers may be entitled to reimbursement, even absent a provision in the policy providing for it, so long as an implied-in-fact or

implied-in-law contract existed. *See United Nat'l Ins. Co. v. SST Fitness Corp.*, 309 F.3d 914, 921 (6th Cir. 2002) (applying Ohio law); *Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co., Inc.*, 598 F.3d 257, 269 (6th Cir. 2010) (applying Kentucky law).

Indian Head considers these decisions to be inapplicable to this case, arguing that Michigan law prohibits an implied contract from existing where an express contract has already been entered into between the same parties and on the same subject. However, this argument is inaccurate as it suggests it is enough that the implied contract relates to the same type of services as those covered in the express contract. The Michigan Court of Appeals has ruled that an implied contract may exist despite an express contract's existence, "where the performance of additional work or benefit not contemplated in the express contract is present." *United Skilled Trades, Inc. v. City of Wyandotte*, No. 298380, 2013 WL 1316743, at *3 (Mich. Ct. App. 2013) (unpublished) (citing *Lansing Bd. of Water and Light v. Deerfield Ins. Co.*, 183 F. Supp. 2d 979, 990–91 (W.D. Mich. 2002)). The Michigan Court of Appeals' analysis applies to the facts in this case. Continental only asserts that an implied contract existed as to coverage that was excluded from the original insurance policies. It is on this basis that reimbursement was applied. As a result, the existence of an express contract alone is insufficient to bar the district court from finding an implied contract existed justifying reimbursement.

Since Michigan law allows for implied-in-fact and implied-in-law contracts to exist, the only remaining question is whether such an implied contract existed between Continental and Indian Head. To this point, this court has noted that the majority of jurisdictions have held that an insurer is entitled to reimbursement under an implied-in-fact contract where the insurer: 1) timely and explicitly reserves its rights to reimbursement; and 2) provides sufficient notice of the specific possibility of reimbursement. *United Nat'l*, 309 F.3d at 919. In order to have the

right under an implied-in-law contract, the insurer must: 1) timely assert its rights to reimbursement; 2) provide notice of the intent to seek reimbursement; and 3) allow the insured to have meaningful control of the defense and negotiation process. *Travelers Prop.*, 598 F.3d at 268.

In this case, either form of implied contract is met as Continental expressly reserved its rights in a letter that plainly stated to Indian Head that Continental would seek reimbursement. Furthermore, the district court only granted Continental reimbursement for claims brought after the reservation of rights, finding the reservation of rights timely with respect to those claims but not those submitted prior to the letter. Considering this, and that Indian Head does not contest that it subsequently accepted the payments while retaining control of the litigation process in the underlying suits, it was proper for the district court to find Continental is entitled to reimbursement as an implied contract existed between the two parties.

There is no need to consider Indian Head's alternative argument that reimbursement is improper because Continental volunteered its service. We addressed this question in *SST Fitness*, finding that, where an insurer has performed an action under a reservation of its right to reimbursement, the insurer cannot be considered a volunteer. *United Nat'l*, 309 F.3d at 923.

### III. CONCLUSION

The plain terms of the policies in this case and the strong preponderance of Michigan state court and Sixth Circuit case law support the district court's summary judgment orders. For the foregoing reasons, we AFFIRM the district court's summary judgment orders with respect to pro rata allocation and Continental's right to reimbursement. We REMAND to the district court for further consideration the question of Continental's liabilities arising out of those claims that

were based on the assumption of liabilities in the 1984 Agreement, but related to injuries that were ongoing thereafter, in accordance with this opinion.